SEXTON ET AL. *v.* OHIO STATE LOTTERY COMMISSION ET AL.

(No. A-8901347—Decided
June 1, 1989.)

Court of Common Pleas of
Hamilton County.

*James F. McDaniel,* for plaintiffs.
*Sylvia S. Neff,* for defendant State
Lottery Commission.
*Richard F. Lesser,* for defendant
Administrator of the Estate of Mary
F. Sexton.

KEEFE, J. Complainants seek a declaratory judgment involving a ten million dollar lottery prize award. The issue *sub judice* can be succinctly stated: Which person or persons won the ten million dollars? Since members of the Sexton family (the plaintiffs) have no dispute *inter se* about the winners, and each one's share, the true significance of this action and decision concerns federal and state death taxes.

On or about March 25, 1987, Shirley Teresa Sexton ("Teresa") personally purchased "lotto" tickets in the Ohio State Lottery from an authorized lottery sales agent, namely, Meier's Pony Keg ("Meier's"), Cincinnati, Ohio. Teresa is the one who literally bought the tickets with her money. As she remembers, on March 25, 1987, she bought ten, twenty or thirty dollars' worth of tickets. She had acquired tickets previously at Meier's and as on March 25, 1987, always purchased them for herself as well as for her mother, Mary F. Sexton, her sister Linda and her brother Rodney. Linda and Rodney were minors at the time. Teresa testified that all of the "lotto" tickets purchased were owned by herself as well as by the other three named family members. The Sexton family (Teresa, mother Mary, Linda and Rodney) were a close group. Teresa's father, Arvil J. Sexton, was not part of the close family unit. He and Mrs. Sexton had been divorced about ten years prior to the March 25, 1987 exciting and productive development. Arvil Sexton, incidentally, is *not* a claimant for any of the lottery prize money.

As noted, Linda and Rodney were both minors at the time the winning ticket was purchased and also at the time the winning ticket was registered with an office of the Ohio State Lottery Commission. Rodney is now over eighteen. The lottery commission agent, John W. Wright, advised Teresa and her mother, Mary, that minors could not be listed as co-owners. Teresa and her mother accepted Wright's advice and Wright then proceeded to write in the names of Teresa and Mary on the joint ownership form. The evidence demonstrates that the only reason why the names of Linda and Rodney were omitted from the ticket ownership form was Wright's instruction that Linda and Rodney were ineligible because of their minority.

Subsequently, apparently acting upon some advice she had received, Mary Sexton called the State Lottery Commission and requested that the annual checks be made payable to her name alone, although ultimately the checks were, in fact, deposited in a joint account in Mary's and Teresa's names. Teresa readily acquiesced in this arrangement. However, there is no proof that the use of the single name of Mary Sexton, as payee, in any way changed the intention of Teresa or Mary, or, in fact, Linda or Rodney, that each of the four persons owned twenty-five percent of the winning ticket and the proceeds therefrom.

Two annual payments of $400,000 each have been made solely in the

name of Mary F. Sexton. These checks were deposited in the aforementioned joint account and the proceeds have been used for the benefit of Teresa, Mary, Linda and Rodney. The third annual payment is now held in escrow.

Unfortunately, Mary Sexton died March 16, 1989.

Teresa *in propria persona* and as next friend of her sister Linda, and Rodney all are requesting this court to declare that these three persons, plus the estate of their deceased mother, each is an owner of twenty-five percent of the proceeds of the winning lottery ticket.

The proof before this court preponderates in favor of the existence of a specific intent — probatively unchallenged — on the part of Teresa that the ownership of the winning ticket lay, *ab initio,* in four twenty-five-percent shares, one hers, one for her mother's estate in view of the mother's death, one for Linda, and one for Rodney. It is emphasized that Teresa actually purchased the winning ticket; the purchase money was hers. Her intent outweighs Wright's execution of the joint ownership affidavit excluding Linda and Rodney, and also counters her mother's request of the commission to draw annual checks only in the mother's name. Moreover, Wright's explanation that minors under eighteen years of age could not be listed as owners of the ticket appears erroneous. R.C. 3770.07(A) expressly contemplates the eligibility of those under eighteen for ticket ownership.

Based upon the evidence before the court, ever since Teresa's acquisition of the winning ticket, it has been her intention that the ownership thereof lay equally in her, her mother, Linda and Rodney. Resultantly, the Ohio State Lottery Commission is directed to make all subsequent payments equally to (1) Shirley Teresa Sexton, (2) the Administrator of the Estate of Mary F. Sexton, deceased, (3) the legal guardian of Linda Sexton during the period of her minority and thereafter directly to her, and (4) Rodney Sexton.

*Judgment accordingly.*

JOHN W. KEEFE, J., retired, of the First Appellate District, sitting by assignment.